Filed 8/5/26  Mata v. Kaiser Foundation Hospitals CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| GUSTAVUS MATA,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br> KAISER FOUNDATION HOSPITALS,<br><br>        Defendant and Respondent. | B328606<br><br>Los Angeles County<br>Super. Ct. No. 21STCV23460 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Randolph M. Hammock, Judge.  Affirmed.

Gustavus Mata, in pro. per.; Tajsha Thomas for Plaintiff and Appellant.

Lagasse Branch Bell + Kinkead, and Lisa M. Magorien for Defendant and Respondent.

———————————

Appellant Gustavus Mata, a registered nurse, brought this action against his employer, Kaiser Foundation Hospitals (Kaiser), alleging 11 causes of action for violations of the California Fair Employment and Housing Act (FEHA), Government Code section 12900, et seq. Mata now appeals the trial court's grant of summary judgment in favor of Kaiser.

Mata has forfeited several of his claims by failing to adequately brief them. For the remaining cognizable claims, we find no error and affirm the grant of summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. *Second Amended Complaint (SAC)*

On May 12, 2022, Gustavus Mata filed the operative second amended complaint for damages (SAC). The SAC alleges 11 causes of action for 1) disability discrimination in violation of FEHA; 2) failure to accommodate in violation of FEHA; 3) failure to engage in the interactive process in violation of FEHA; 4) harassment in violation of FEHA; 5) retaliation in violation of FEHA; 6) race discrimination in violation of FEHA; 7) national origin harassment in violation of FEHA; 8) wrongful termination in violation of FEHA and public policy; 9) failure to prevent discrimination, harassment, and retaliation in violation of FEHA; 10) hostile work environment; and 11) gender discrimination in violation of FEHA.

Factually, the SAC alleges that in January 2010, Mata was hired and employed by Kaiser as a registered nurse at the medical center (LAMC) located at 4867 W. Sunset Blvd. in Los Angeles. Mata is a Filipino American. In 2016, Mata developed "work-related psychiatric stress which led to chronic stable angina." In 2017, he filed for workers compensation benefits "for

2

injuries arising out of his employment" with Kaiser.  In June 2018 he requested industrial leave to undergo triple heart bypass surgery.  The leave was granted and he underwent the surgery.

By April 2019, Mata had recovered from surgery.  He returned to work between the first and second week of April 2019.  On May 31, 2019, he was involved in a car accident and suffered injuries to his neck, requiring surgery.  He requested and received another leave of absence on or about June 4, 2019.  On December 10, 2019, he underwent neck surgery for his injuries.

On May 28, 2020, he was cleared to return to work with modified duties.  He was advised that he was scheduled to work on July 26 and 27, 2020.  However, on July 28, 2020, Kaiser notified Mata that he should not have been scheduled for work before he took and passed a new employee orientation and a Prophecy Assessment Test.

We note here that according to the SAC, Mata objected to imposition of the requirement that he take a Prophecy Assessment Exam.  On summary judgment, he objected to taking an EKG exam that Kaiser said was mandatory for all employees, like him, working in coronary care units.  He apparently dropped his claims about the Prophecy Assessment Exam.  Mata never formally amended the SAC to correct or add allegations to his contentions.  In this opinion we proceed on the assumption that it is the taking of the EKG exam that is the basis of Mata's claims.

Mata demanded to be paid for July 26 and 27 and to be scheduled for work now that his doctor had cleared him to return to work.  Kaiser employees and managers told him that if he did come to work before he had passed the test, they would escort him out of the building and remove him from the schedule for the

3

coronary care unit where he worked. Mata asked to be returned to work without taking any of the exams Kaiser was insisting he pass.

Mata took the Prophecy Exam [in fact, the EKG exam] under protest on August 12, 2020. He was told he failed the exam. Mata demanded to see the results but Kaiser refused without offering any explanation. Kaiser refused to provide reasonable accommodations and refused to engage in an interactive process to determine what reasonable accommodations could be made. Kaiser then removed him from the nursing schedule. Mata further averred that a "White Caucasian nurse" received favorable treatment because she was permitted to return to work without taking any exams.

Mata alleged Kaiser's actions resulted in discrimination and disparate treatment against him based on his race, national origin, and disability. Mata averred that his "race, the color of his skin, and his national origin as a Filipino was a substantial motivating factor in [Kaiser's] decision to take adverse employment actions against him." He also alleged he was subject to harassment and retaliation by his superiors and managers for seeking accommodations for his disability, refusing to tolerate bullying, abuse, and humiliation from other employees, and for reporting the same behavior. Mata alleged he "was willing and able to perform the essential job duties of his position or other suitable positions if reasonable accommodation had been made."

Mata's FEHA claims arise from the allegation that Kaiser's refusal to allow him to return to work resulted in an "effective[] terminat[ion.]"

4

## II.    ***Kaiser's Motion for Summary Judgment***

On November 17, 2022, Kaiser moved for summary judgment.  In a nutshell, Kaiser contended it was entitled to judgment as a matter of law because the undisputed facts established that Kaiser had implemented the EKG exam as mandatory for all employees (while Mata was on leave) and Mata could not produce evidence of pretext, discrimination of any kind, retaliation or failure to accommodate his disabilities.  Kaiser offered Mata assistance in retaking the exam he failed and granted every medical leave he requested, resulting in 26 months of medical leave.

Kaiser contended that at his deposition, Mata could not identify a single negative comment or conduct based on race, gender, or disability.  He confirmed Kaiser readily accommodated his disability and properly communicated with him along the way.  He confirmed he never received criticism for any of his complaints and was not treated differently for lodging complaints or requesting accommodations.

Kaiser argued it was undisputed that the hospital implemented an EKG exam as a required competency exam for registered nurses to continue practicing in EKG-related departments, like Mata's coronary care unit.  On August 12, 2020, Mata took and failed the EKG exam.  He was told he failed the exam and that he could not return to work until he passed it, as it was a required competency validator for his position in the coronary care unit.  The hospital scheduled him to retake it on August 17, 2020.  Mata acknowledged that management made attempts to help him prepare for the EKG exam so he would pass it on his second attempt.

5

Kaiser contended Mata did not retake the exam on August 17, 2020.  He produced a doctor's note taking him off work from August 26, 2020 through September 3, 2020. Kaiser approved the leave and rescheduled the exam for September 8, 2020 but Mata called in sick on that date.  Kaiser rescheduled the exam for September 16, 2020.  Mata did not take the exam on that date.  He continued to submit doctor notes extending his medical leave for over two years.  Kaiser approved all his leave requests.

In support of its motion, Kaiser presented a Declaration of Julie Fisher, a human resources consultant at Kaiser Foundation Hospitals' Program Office.  She stated that the LAMC Coronary Care Unit currently employs 107 registered nurses, of which 87 are identified as Asian, representing 74 percent of the workforce within the unit.  Mata is a registered nurse for that unit currently on medical leave.  On April 16, 2019, she received an email from Mata complaining that department administrator Jill Frey acted inappropriately when she stood at a nursing station and waved papers at him.  Fisher investigated the complaint and found no evidence of harassment or inappropriate behavior.  She told Mata she could not substantiate his claims.

Kaiser also presented a Declaration of Joyce Leido, the Chief Nurse Executive at LAMC since 2021.  She oversees nursing clinical practice and ensures competency requirements for safe patient care.  From 2016 to 2022, Leido was Assistant Medical Center Administrator for Nursing Practice at LAMC.  In that position Leido determined that LAMC did not have an ongoing method in place to assess the competence of its nurses.  Specifically, unlike other Kaiser Hospitals, LAMC did not require its nurses to take an EKG assessment exam annually to validate

6

competency. In 2018, she implemented both the Prophecy Assessment Exam and EKG exam at LAMC. The Prophecy Assessment Exam is used by many leading hospitals across the United States and has assessed the clinical knowledge and skills of at least 30 percent of U.S. nurses in the last six years. The Prophecy Assessment Exam is not punitive and is simply used to determine whether nurses may need more training.

The EKG exam is a required competency exam for nurses to continue practicing in EKG-related departments, like LAMC's coronary care unit where Mata worked. It is a standardized exam and each nurse takes this exam based on the unit where they work. Leido implemented the EKG and assessment exams in 2018, after discovering LAMC did not administer the exam like all other Kaiser hospitals.

The overall pass rate for the EKG exam on the first try is 95 percent. Nurses who fail the EKG exam have an opportunity to retake it. Kaiser does not discipline or terminate anyone because of their Prophecy Assessment Exam scores, nor did it discipline or terminate Mata for refusing to take the Prophecy Assessment Exam. Mata took the EKG exam on August 12, 2020 and failed. He has not retaken and passed the EKG exam and is not currently qualified to perform work in the coronary care unit. The policy applies to all nurses working in that unit. All registered nurses, licensed vocational nurses and staff caring for cardiac monitored patients must successfully complete an ongoing EKG competency validation as appropriate.

Kaiser also submitted a Declaration of Oscar Garcia Padilla, a human resources case manager with the Integrated Disability management. On September 30, 2022, he personally mailed a letter to Mata extending Mata's medical leave through

December 31, 2022, as a reasonable accommodation to him. Mata had been on leave since August 26, 2020. Mata was entitled to a two-year leave under his collective bargaining agreement and that leave was set to expire September 28, 2022. The letter informed Mata that if he did not contact Padilla by December 24, 2022, Kaiser would presume Mata did not intend or was unable to return to work in any capacity. Mata never responded to the letter.

Mata's sworn deposition testimony was also submitted in support of the motion for summary judgment.

- He could not recall if he observed anyone treating him differently because of his specific medical conditions.
- He could not recall if he heard anyone make any specific negative comments about his specific medical condition.
- No one discouraged Mata from taking a medical leave.
- He understood that Kaiser extended his disability leave for 26 months as an accommodation to him, even though he was entitled to 24 months only.
- He could think of no time when Kaiser did not promptly communicate with him about his request for medical leave.
- He could not recall hearing anyone at Kaiser make any comments or engage in any conduct that he thought was negative about Filipino workers.
- He could not recall observing anyone treating him differently because of his race.

8

- Kaiser approved each of his medical leaves and never denied him an accommodation.
- He was never disciplined for any complaint he brought during his employment.
- He understood Kaiser would not clear him to return to work as a nurse in the coronary care unit until he passed the EKG exam.
- Kaiser reached out several times to discuss the EKG exam with him and offered him assistance with exam preparation from both the Director of Education at Kaiser and an instructor.
- He was unaware of any coronary care nurses allowed to report to work without passing the EKG exam.
- He agreed it was important to assess the clinical knowledge and skills of a coronary care unit nurse to ensure patient safety.
- He agreed he would take the exam once it is included in the union collective bargaining agreement.
- He testified that he would not take the exam because it was a "business scheme" impacting patient care and the career of nurses.
- He did not know if anyone at Kaiser was terminated for failing the Prophecy Assessment Exam.
- He presented no evidence that he had been disciplined for filing grievances against staff at LAMC, although he believed accusations made against him for patient care infractions were retaliatory.

III.  ***Mata's Opposition to the Motion for Summary Judgment***

Mata opposed summary judgment.  In support of his opposition, Mata presented his sworn declaration which contradicted much of the prior sworn testimony he gave during his deposition.  He was hired by Kaiser on January 18, 2010, and was employed in the coronary care unit (CCU).  In 2016, he developed work-related psychiatric stress which led him to suffer chronic stable angina.  In November 2017, he applied for workers compensation benefits for cumulative trauma injuries for psychological injuries as well as for orthopedic and internal injury.  In July 2018 he asked for industrial leave to undergo triple heart bypass surgery.  On May 31, 2019, he was involved in a non-work-related automobile accident and sustained injuries to his neck which necessitated neck surgery.  On December 10, 2019, he underwent neck surgery for the injuries sustained in the automobile accident.

On May 29, 2020, his physician issued a medical clearance allowing him to return to work with modified duties. At that point, he had been on medical leave for less than one year.

Kaiser did not allow him to return to work and on July 29, 2020, he received a voice message advising him that he would not be given a work schedule unless he underwent a new employee orientation and passed a Prophecy Assessment Exam.  He was not permitted to return to work and he was harassed by supervisors at Kaiser who told him if he did attempt to return to work, he would be escorted out of the LAMC building.

On August 12, 2020, he took the EKG exam. He was advised that he failed it, but he was not allowed to inspect the result to determine whether he actually failed the exam. Kaiser refused to show him the exam. He objected to taking the exam as he was not a new employee and he objected to Kaiser making the EKG exam mandatory when it had not previously been mandatory. Due to his psychological disability, including very high levels of stress and anxiety, he objected that he could not perform well while taking an exam under strict timed conditions and he asked for accommodations to take the exam. His request for accommodations was not met. He had not been permitted to return to work and has obtained a medical leave from Kaiser. He was never advised that it was a required competency exam and was never previously advised he could not return to work without passing the EKG exam. He argued Kaiser had no authority to unilaterally impose a mandatory EKG exam on nurses employed in the coronary care unit, as he was.

Mata "believed" the exam was used to force him out of Kaiser. He believed Kaiser's supervisory employees wanted to get revenge against him for filing grievances and the EKG exam was used as a tool to force him out of Kaiser. He believed false accusations leveled at him by Kaiser's supervisory employee were intended to retaliate against him for filing grievances and complaints of discrimination, harassment, and retaliation against Kaiser's supervisor employees. The false accusations were intended to discourage him from taking medical leave and to retaliate against him for having requested it. He believed he was singled out, discriminated, and harassed due to his disability and due to his physical and psychological medical conditions.

11

Mata cited two instances of alleged discrimination. In May 2018, he asked a fellow employee for a copy of the previous EKG exam. The employee refused to give it to him in a blunt and rude manner. He believes the employee singled him out due to his disability. He also heard that same employee say that middle aged men were more prone to depression compared to people who were not male and middle aged. He believes the employee was singling him out for complaining about his own depression.

On another occasion, when he requested an N95 mask, a Caucasian employee gave him a direct order to leave the hospital. He complied with the order because he was afraid she would make a false accusation against him.

Based on these facts and his "personal experiences at Kaiser," Mata believes he was targeted and discriminated against and harassed due to his race and national origin and because he speaks English with a Filipino accent and identifies as a Filipino-American. He also believes he suffered discrimination due to his male gender and because he was allegedly speaking "loudly" in a hostile tone of voice. He generally observed female employees at Kaiser were treated favorably compared to male employees.

In support of his allegations, Mata submitted several exhibits.

- Exhibit 8 is a "[v]oice [t]ranscription" dated August 20, 2020, from the staffing office advising Mata that he did not show up for the EKG Test that morning and they were calling to make sure he was ok. The message asked him to give the staffing office a call because appearing for the test would otherwise be considered a 'no call no show." A second voice transcription from August 1, 2020, is also from the

12

staffing office advising Mata that he showed up for work the night before despite being told twice not to return to work until he was cleared for re-orientation setup scheduled for August 10 and 11. He was told he would be escorted out of the building if he showed up again that night.

- Exhibit 9 is a photograph of a security guard who Mata alleges was harassing him and following him into the building.
- Exhibit 10 is a photograph of a person filming him on a phone on September 16, 2021.
- Exhibit 11 is an email chain. On August 12, 2020, Beth Pell, Department Administrator, gave Mata a work schedule for three shifts that needed to be validated for competency in the coronary care unit. She advised him that on Monday morning he should report to her to retake his EKG test. She told him he would not be placed on the schedule without successful completion of the validation of competency. Mata responded that he would only meet with management on Monday in the presence of a nurse representative of his choice. He reminded Pell that he was under the supervision of the coronary care unit, not her and he wanted the same treatment extended to one Mika Lagman who completed her associate degree without harassment, intimidation and "well favorable scenarios." He hoped "my race and color of skin will not be hindrance in completing my re-orientation in CCH."

13

- Exhibit 12 is an email chain between Mata and Paul Martin, Director of Human Resources. On August 13, 2020, Mata wrote Martin to say he understood Martin was acknowledging and taking accountability for an employee's "failure to act as an unbiased & responsible HR Labor consultant." On August 20, 2020, Mata wrote to Martin again that he had complaints of "discriminatory, harassment, retaliatory and threatening action" by Nory Sargeant and Beth Pell. Martin responded on August 20, 2020, stating that he understood "management has attempted to engage you in the return to work process, which includes completion of competency requirements. It's my understanding management has been accommodating your request with respect to your next EKG exam. In light of your claims of harassment and discrimination I am attaching the form you can complete which begins the internal investigation process into those allegations."
- Exhibit 13 is an email chain between Mata and Jill Frey on April 22, 2019. Mata informs Frey that he wants to complete his re-orientation on April 23 and will let her know after his third night shift whether he will need an extension. He advises he will continue advocating "patient care and well being of my would be patients."
- Exhibit 14 is an email from Mata to hospital administrators Paul A. Grassfield, J. Casey Smith, and James A. Busalacchi advising them of the "hostile work environment, discrimination and

14

slander I received from the following people: Joyce Leido, Jill Frey, Sarah Kwan and Bradley Howard." He alleged he objects to the Prophecy Assessment and he experienced rudeness and disrespect from them during employee gatherings. He asked that they each be added to his pending grievance case.

- Exhibit 15 is an email Mata sent to human resources complaining that a fellow employee, Wai Ning Mak, interrupted his "power nap" in the break room. He also objected to Jill Frey's response that the break room was a public place everyone was allowed to use at any time. Mata felt like he was being harassed, Frey was not protecting his rights, and management was spying on him.
- Exhibit 16 is an email Mata sent to hospital administrator Paul Grassfield on November 17, 2017, about an incident that occurred on November 10, 2017, when he was accused by a nurse manager of inappropriate behavior towards her when he complained about her conduct.
- Exhibit 17 is a grievance filed on Mata's behalf by his union representative.
- Exhibit 18 is a text message Mata received from his colleague Minda Alona on October 20, 2020, who told him she agreed with him there were several versions of the "test" and he was given the "difficult one."
- Exhibit 19 is a grievance filed by Mata on January 15, 2016.
- Exhibit 20 is a series of two emails dated July 1 and 2, 2015 from Mata to hospital administrators

15

detailing unfair labor activity and harassment against which Kaiser was not protecting him.

- Exhibit 21 is a grievance dated April 22, 2015, that he was written up for a mistake by another employee who is also a leader of a union which opposes Mata's union. The write up was for the purpose of harassing Mata and his union.

- Exhibit 22 is a grievance dated March 3, 2015, directed to "whom it may concern" about a co-worker representing an opposing union who harassed him outside the medical center and the medical center security guard refused to come to his assistance.

- Exhibit 23 is a grievance dated October 29, 2014, addressed to "whom it may concern" about an opposing union organizer mocking and harassing Mata in the hallway outside the staff lounge.

- Exhibit 24 is an email chain dated September 14-16, 2020 between Mata and Hester Randle, CCU Nurse Manager who is scheduling a meeting with Mata to review the prior EKG test results the next day and then scheduling the retaking of the EKG test the following day. Mata responded by asking for a fellow employee to be present during the scheduled meetings. Randle responded that she was unavailable at the times Mata wanted and continued to suggest that she could review his answers to the initial test on Tuesday morning with him and schedule the retaking of the test on Wednesday. Mata responded that he was "sick & sickened by the harassment I'm receiving from management" and

objected to the arrangements made for the retest, the persons who were scheduled to help him and the "threatening and infuriating voicemail" he received from the person who rescheduled him to take the test on August 25. He insisted on reviewing the questions and answers in the presence of his nurse representative and wanted only certain persons present as proctors during the test and certain persons excluded from helping him prepare for the test. Randle responded that he was scheduled to retake the test.

- Exhibit 25 is an email chain dated August 13, 2020, between Mata and hospital administrators Julie Fisher and Paul Martin in which Mata complains Fisher racially discriminated against him in favor of Jill Frey because they are the same race.

- Exhibit 26 is an email dated June 26, 2018, from Mata to hospital administrators James Busalacchi and Paul Grassfield wherein Mata believes members of the staff are "trying to paint my personality as rude, disrespectful, and intimidating creating hostile environment." He hoped his grievances would be justly resolved before June 29, 2018, as "Justice delayed is justice denied."

- Exhibit 27 is an email to hospital administrators Paul Martin and Paul Grassfield dated December 1, 2017, that Beth Pell "maliciously labeled those people including me who filed or on work related injury as 'HORRIBLE' in front of number of witnesses." He asks human resources to investigate her and "include

her on my case of workplace violence and harassment."

- Exhibit 28 is a complaint Mata filed with the EEOC on April 2, 2021, complaining of Pell's alleged comments that employees who file for workers compensation are "horrible people." He also accused Pell and Jill Frey of trying to trick him to prevent him from obtaining a workers' compensation claim form. He alleged discrimination based on race, color, national origin, gender, age, disability, and engaging in protected activity. Exhibit 28 also includes a right to sue letter from the EEOC dated April 9, 2021.

- Exhibit 29 is a return to work with restrictions letter dated May 28, 2020, signed by Vu H. Le, M.D.

- Exhibit 30 is an email dated October 26, 2020, from Arturo DeVera, a nurse in the coronary care unit, to Mata stating out that on August 17, 2020, DeVera witnessed management telling Mata he could not work that day. In the email, Mata responded that he has been racially harassed in the past and is currently being harassed racially as well.

- Exhibit 31 is an email from Mata to several persons describing the disrespect he has been subjected to by human resources and management.

- Exhibit 32 is an email from Mata dated November 2, 2020, to Hester Randle accusing her of making derogatory comments about him when she allegedly maliciously accused him of, among other things, insubordination on September 16, 2020.

- Exhibit 33 is an email dated September 16, 2020, from Hester Randle telling Mata that he failed to report for the EKG retake exam on September 16 and did not call to explain his absence. Randle sets out that instead of reporting, Mata sent another email with conditions under which he would agree to take the EKG exam, conditions the hospital had previously refused because they were not part of the process applicable to all other employees. On September 15, 2020, Mata ceased further engagement and told the hospital to just terminate him. Randle concluded the letter by asking him to complete the paperwork to resign, if that was his intention, or to report on September 18 to retake the test as ordered by the hospital. She ended with a hope that he would return to work.
- Exhibit 34 is a letter dated April 13, 2021, to Mata from administrator Julie Fisher reminding Mata that during his leave, there is no business reason for him to be in patient care units. She noted that on April 12, 2021, he was seen on the floor handing out literature to on-duty nurses.
- Exhibit 35 is an email dated July 4, 2018, from Mata to administrators James A. Busalacchi, Paul Grassfield and Paul Martin advising that he is experiencing chest pains caused by the retaliation, harassment, and verbal defamation and discrimination that he has experienced which have led to his health problems.

- Exhibit 36 is an email chain dated around August 13, 2020, where administrator Beth Pell advises Mata of the need to retake the EKG test and that he will not be placed on the work schedule until successful completion of the test. Mata responds that he will only meet with management in the presence of a nurse representative of his choice and requests that he be treated without harassment, intimidation, and well favorable scenarios. He notes he is not a transferee or new employee so "please don't treat me like one with intimidation."
- Exhibit 37 is a letter dated September 30, 2022, from Oscar E. Garcia, Human Resources Case Manager, to Mata asking Mata if there are any reasonable accommodations Kaiser could provide that would assist him in returning to work. Mata is also informed that his leave was being extended to December 31, 2022, to accommodate his condition.
- Exhibit 38 is a grievance dated March 25, 2014, outlining Mata's pending grievances.
- Exhibit 39 is a formal contract grievance on Mata's behalf by the union labor representative challenging three corrective actions taken against him for rudeness and threatening remarks.

Without supporting admissible evidence, Mata alleged these triable issues of material fact: 1) the EKG exam was not mandatory; 2) he never failed the EKG exam in August 2020; 3) he was never told the reason why he could not return to work; 4) he did not know he could not go back to work; 5) he believes he has been terminated from Kaiser; 6) he recalls the employee

would not give him a copy of the exam because she was biased against disabled people and middle aged men; 7) he was subjected to false allegations that he spoke too loudly, threatened people and that he was not qualified to perform his professional duties; 8) Kaiser refused to show him the exam he failed; 9) Kaiser did not grant him intermittent leave which he requested in or about May 2019 due to his on and off chest pains;10) Kaiser used the pretext he had failed the EKG exam to prevent him from returning to work at Kaiser; 11) Kaiser refused to accommodate his modified duties for a whole month. He was ready to work on May 25, 2020, and they refused to allow him back to work with pay until June 15, 2020; 12) Kaiser often failed to promptly communicate with Mata with regards to his request for medical leave; 13) Kaiser treated him, a Filipino employee, differently because he speaks English with a Filipino accent and was criticized for the tone of his voice and manner of speaking; 14) Kaiser spied on him while he was in the nurses' lounge in order to harass him; Frey spoke to him disrespectfully and humiliated him by waiving a piece of paper in front of him in the presence of others; 15) he denied his conduct was the cause of a corrective action level 3; 16) he meant to testify at the deposition that Charge Nurse Samantha Hanes acted in bad faith, not that he acted in bad faith when he brought a harassment complaint against her; 17) Kaiser frequently denied him accommodations for his disability.

Mata argued he was "harassed" by his supervisors, believed he did not actually fail the EKG exam because Kaiser refused to show him the results, and objected to the recent implementation of the EKG exam. Mata further contended his request for exam accommodations, including more time, were not met. Mata

21

averred he was "never made aware that the exam was supposed to be mandatory, . . . never advised that it was supposed to be a required competency exam, and . . . never previously advised that [he] could not return to work without passing the EKG Exam" and that pursuant to his collective bargaining agreement, "Kaiser had no authority to unilaterally impose a mandatory EKG exam on nurses employed in the Coronary Care Unit." Mata declared his belief that "the EKG Exam was introduced and used to force me out of Kaiser and prevent me from working at Kaiser."

Mata also contended "Kaiser's supervisory employees wanted to get revenge against [him] and wanted to discipline [him] for filing grievances" and that he was subjected to retaliation and a hostile workplace while employed at Kaiser. Mata argued he was singled out due to his disabilities, and suffered "discriminatory remarks during a lecture about both disabled people and males where [a Kaiser employee] stated that middle aged men were more prone to depression compared to people who were not males and not middle aged."

Mata averred he was singled out and harassed because he speaks English with a Filipino accent, and suffered gender discrimination since he was accused of speaking "loudly" and female Kaiser employees "were treated favorably compared to male employees."

IV. ***Kaiser's Reply in Support of Summary Judgment***

Kaiser's reply in support of its summary judgment motion reiterated much of its argument in its initial brief. Kaiser argued Mata "relies on his own sham declaration to create false narratives that directly controvert his prior sworn deposition testimony and the evidentiary record."

22

Kaiser noted Mata's declaration contradicted his prior sworn deposition testimony. "A party cannot raise new issues of materiality merely by submitting a declaration in opposition to a summary judgment motion." (*Lewinter v. Genmar Ind., Inc.* (1994) 26 Cal.App.4th 1214, 1223.) When representations in a plaintiff's declaration contradict his prior deposition testimony, the representations are insufficient to defeat summary judgment and should be stricken by the court. (*Collins v. Hertz Corp* (2006) 144 Cal.App.4th 64, 79.) It is well settled that in resolving a motion for summary judgment, courts " 'disregard contradictory and self-serving affidavits of the party.' " (*Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, 1087.)

## V. *The Trial Court's Ruling*

On January 31, 2023, the trial court granted summary judgment in favor of Kaiser. The trial court stated: "[T]he way it boils down to is very simple, I think. Here he was required to pass his exam. You [Kaiser] gave him a couple chances, he didn't pass it, that's why we fired him or did not allow him to return to work or whatever. That's really pretty much – well, you do have to confront, you know, race, gender, sexual, whatever it is, never entered into play."

In its written decision the trial court reasoned that Mata's "subjective beliefs as presented in this case, absent any corroborating and competent evidence do not rise to the minimal required level to create a triable issue of material fact" as to his FEHA claims. Mata timely appealed from the judgment.

# DISCUSSION

## I. *Standard of Review*

A trial court grants summary judgment when a moving party shows there are no triable issues of material fact and the party is entitled to judgment as matter of law. (Code Civ. Proc. § 437c, subd. (c).) "[I]n moving for summary judgment, a 'defendant . . . has met' his 'burden of showing that a cause of action has no merit if' he 'has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials' of his 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.' (Code Civ. Proc., § 437c, subd. (o)(2).)" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.)

On appeal from summary judgment, we exercise an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court. (*San Diego Unified Port Dist. v. Gallagher* (1998) 62 Cal.App.4th 501, 503.) "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [their] evidentiary submission while strictly scrutinizing defendant['s] own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

" 'On review of a summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court.' " (*Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230.)  " ' "As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.  In other words, review is limited to issues which have been adequately raised and briefed." ' " (*Abdulkadhim v. Wu* (2020) 53 Cal.App.5th 298, 301 (*Abdulkadhim*).)  " '[D]e novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues.' " (*Claudio*, at p. 230.)  Put differently, "to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287 (*City of Santa Maria*).)  "We are not obliged to make other arguments for [appellant] [citation], nor are we obliged to speculate about which issues counsel intend to raise." (*Opdyk, v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830−1831, fn. 4; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["We are not bound to develop appellants' arguments for them"].) We may and do "disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt." (*City of Santa Maria,* at p. 287.)

Indeed, the pleadings play a key role and set the boundaries of the issues to be resolved at summary judgment. The scope of the issues to be properly addressed on summary

judgment is generally limited to the claim framed by the pleadings.  (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 444 (*Jacobs*).)

II.  ***Analysis***

    A.    **Summary Judgment on Mata's First and Sixth Causes of Action for Disability and Race Discrimination Was Properly Granted**

Generally, to state a claim for discrimination under FEHA, an employee must show "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive."  (*Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 355 (*Guz*).)  "[A] plaintiff must establish a causal nexus between the adverse employment action and his protected characteristic."  (*Martin v. Trustees of California State University* (2023) 97 Cal.App.5th 149, 162 (*Martin*).)

In evaluating claims of discrimination under FEHA, we apply the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792.  (*Guz, supra,* 24 Cal.4th at p. 354.)  In the context of employment discrimination cases decided on summary judgment, "[i]f the employer presents admissible evidence either that one or more of plaintiff's prima facie elements is lacking, or that the adverse employment action was based on legitimate, nondiscriminatory factors, the employer will be entitled to summary judgment *unless the plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant's showing*."

26

(*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 344; *Guz, supra*, 24 Cal.4th at pp. 355–356; *Martin, supra,* 97 Cal.App.5th at p. 150 ["the burden of production shifts to the plaintiff to present evidence creating a triable issue of fact showing the employer's stated reason was a pretext for unlawful animus in order to avoid summary judgment"].)

### 1. Discrimination Based on Disability

Evidence of discriminatory motive must be examined carefully in disability discrimination cases to determine "whether there is direct evidence that the motive for the employer's conduct was related to the employee's physical or mental condition." (*Wallace v. County of Stanislaus* (2016) 245 Cal.App.4th 109, 123.) "To establish a prima facie case of mental disability discrimination under FEHA, a plaintiff must show the following elements: (1) []he suffers from a mental disability; (2) []he is otherwise qualified to do the job with or without reasonable accommodation; and (3) []he was subjected to an adverse employment action because of the disability." (*Higgins-Williams v. Sutter Medical Foundation* (2015) 237 Cal.App.4th 78, 84.)

In the trial court, Kaiser argued Mata had not stated a prima facie case of disability discrimination because it was undisputed that (1) the EKG exam was mandatory for all nurses in Mata's unit; (2) Mata failed the EKG exam and therefore was not qualified for his job; and (3) Mata had not suffered any adverse employment action because Kaiser granted his medical leave requests, offered him an opportunity to go over the exam with assistance before retaking it, and did not discipline him. Kaiser persists in this position on appeal.

27

"If the employer presents admissible evidence either that one or more of plaintiff's prima facie elements is lacking, or that the adverse employment action was based on legitimate, nondiscriminatory factors, the employer will be entitled to summary judgment unless the plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant's showing." (*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 203; *City of Santa Maria, supra,* 211 Cal.App.4th at p. 287 [conclusory arguments not supported by legal authority or analysis are generally disregarded].)

Mata has not refuted these assertions of fact with evidence of his own. Mata contends his managers and supervisors knew of his disabilities, "which hinder his ability to perform well in examinations," and purposefully imposed the EKG exam on him as a means of forcing him out of the Coronary Care Unit because they purportedly knew that he would fail it, and "therefore use[d] this as a reason or a pretext to wrongfully terminate the appellant from his employment."

Mata's newly proffered contention that he had a disability that prevented him from taking the EKG test at all is not alleged in the SAC. Even if it were, his speculative belief that the test was a pretextual reason to fire him is not supported by any evidence whatsoever. Mata offered no evidence upon which one could infer or establish discrimination based on disability. The trial court properly granted summary judgment in Kaiser's favor.

2.     Discrimination Based on Race

Turning to Mata's racial discrimination claim, while the first two elements remain the same, the third and fourth elements required to state a prima facie case for racial discrimination are that the plaintiff (3) suffered an adverse

28

employment action, such as termination, demotion, or denial of an available job, because of his race, and (4) he was replaced by a member outside of his protected class or other employees were treated more favorably. (*Guz*, *supra,* 24 Cal.4th at p. 355.)

It is undisputed that Mata is a member of a protected class because he is Filipino.

In the trial court, Kaiser again argued Mata had not stated a prima facie case for race-based discrimination under FEHA because 1) he had not passed the EKG exam and therefore was not performing his job satisfactorily; 2) he has never been treated differently due to his race; and 3) he could not establish a causal connection between his race and any adverse employment action. Kaiser argued Mata had not established pretext because Kaiser had a legitimate, non-discriminatory reason for refusing to allow Mata to return to work until after he passed the EKG exam, because the EKG exam is a *required* competency assessment for nurses at Kaiser LAMC and *all* nurses in Mata's position must pass the exam before reporting to work. We agree with the trial court that Kaiser's evidence precluded Mata from demonstrating a dispute of fact as he could not demonstrate discriminatory animus or pretext.

On appeal, Mata's argument in support of his racial discrimination claim is unsupported by legal authority and is predicated on several conclusory statements and his own beliefs, including that Mata was performing his job satisfactorily, he did not receive complaints from patients, and he suffered discriminatory treatment because he was accused of engaging in rude, disrespectful, and intimidating behavior. His declaration also expressly contradicts his prior sworn deposition testimony. Mata contends he has a "strong Filipino accent while speaking in

29

English" and had "trouble understanding and answering" some of the questions asked during his deposition.

Mata failed to present evidence that could create a triable issue of fact as to pretext or racial discrimination. (*Foroudi v. The Aerospace Corp.* (2020) 57 Cal.App.5th 992, 1007–1008 [" 'The employee's "subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations"]; *Benavidez v. San Jose Police Dept.* (1999) 71 Cal.App.4th 853, 860 [a party cannot create an issue of fact by a declaration which contradicts his prior discovery responses]; *City of Santa Maria*, *supra*, 211 Cal.App.4th at p. 287 [conclusory arguments not supported by legal authority or analysis are generally disregarded].)

B.   **Summary Judgment on Mata's Second Cause of Action for Failure to Accommodate Was Properly Granted**

Under section 12940, subdivision (m), an employer must provide a reasonable accommodation for the "known physical or mental disability" of an employee. (Gov. Code, § 12940, subd. (m).)  The plaintiff must prove (1) he has a disability under the FEHA; (2) he is qualified to perform the essential functions of the position; and (3) the employer failed to reasonably accommodate the plaintiff's disability. (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1009–1010 (*Scotch*).)  A reasonable accommodation is a " 'modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired.' " (*Id.* at p. 1010.)

The trial court pointed out that in his SAC, Mata framed this cause of action as a "failure to accommodate his ability to work" and that Kaiser generally "failed to reasonably

30

accommodate his disability" but later raised a new argument in his opposition to Kaiser's motion for summary judgment, contending that Kaiser instead failed to accommodate his EKG exam requests for more time due to his "stress and anxiety."

First, it is well established that the pleadings frame the issues to be decided on summary judgment.  (*Jacobs*, *supra*, 14 Cal.App.5th at p. 444.)  In a motion for summary judgment, the defendant need only address the issues raised in the complaint (*Government Employees Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 95, 98–99, fn. 4), and a plaintiff cannot create a triable issue by presenting argument or evidence on issues not raised by the pleadings.  (*Residential Capital v. Cal-Western Reconveyance Corp.* (2003) 108 Cal.App.4th 807, 829; *Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1342 [" 'The [papers] filed in response to a defendant's motion for summary judgment may not create issues outside the pleadings and are not a substitute for an amendment to the pleadings' "] (*Tsemetzin*).)  The trial court properly rejected Mata's new argument not alleged in the SAC.

In any event, even if the allegations were properly presented in Mata's SAC, the trial court determined Mata never presented evidence that he informed Kaiser he needed more time to take the EKG exam, except that he needed a "neutral place to take the EKG Exam, free from harassment and intimidation . . . before end of work hours tomorrow."  The trial court also determined, and it is undisputed, Kaiser offered Mata several opportunities for assistance with exam preparation before he retook the exam.

31

Mata now argues on appeal that Kaiser failed to consider his request for accommodation because it provided him with time off from work to study for the EKG exam instead of adjusting or modifying the EKG exam. Again, Mata presents no evidence he asked for such a modification or adjustment at all. To the extent Mata asks that he be exempt from the EKG exam, "FEHA does not obligate the employer to accommodate the employee by excusing him . . . from the performance of essential functions." (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 375.)

Finally, Mata argues Kaiser should have assigned him to a different position or department that does not require him to pass the EKG exam but provides no evidence indicating any suitable position existed despite Kaiser's presentation of evidence, in the form of Mata's doctor's notes and deposition testimony, that Mata was off work due to medical leave through the time of the summary judgment motion. (See *Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 952.) Mata has not presented a triable issue of material fact. (*Abdulkadhim, supra,* 53 Cal.App.5th at p. 301 [review is limited to issues that are adequately briefed]; *City of Santa Maria, supra*, 211 Cal.App.4th at pp. 286–287; *Tsemetzin, supra,* 57 Cal.App.4th at p. 1342 ["The [papers] filed in response to a defendant's motion for summary judgment may not create issues outside the pleadings and are not a substitute for an amendment to the pleadings"].)

C. **Summary Judgment on Mata's Third Cause of Action for Failure to Engage in Interactive Process Was Properly Granted**

FEHA provides a separate cause of action when an employer fails "to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable

accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition." (Gov. Code, § 12940, subd. (n).) " 'The "interactive process" required by the FEHA is an informal process with the employee or the employee's representative, to attempt to identify a reasonable accommodation that will enable the employee to perform the job effectively.' " (*Scotch, supra*, 173 Cal.App.4th at p. 1013.) "Although it is the employee's burden to initiate the process, no magic words are necessary, and the obligation arises once the employer becomes aware of the need to consider an accommodation." (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 62, fn. 22.) " 'Liability hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith.' " (*Scotch,* at p. 1014.)

The trial court again noted Mata's attempt to introduce new issues in his opposition to Kaiser's motion for summary judgment as to his request for accommodations for the EKG exam. In his SAC, Mata alleged only that he was willing to "participate in an interactive process to determine whether a reasonable accommodation could be made so that he would be able to perform the essential job requirements for his position or any other positions" for which he was eligible, but that Kaiser "failed to participate in a timely, good-faith interactive process[.]"

Kaiser presented evidence that it approved every leave request and otherwise never denied any of Mata's accommodation requests. Mata provided no evidence that Kaiser did not engage in the interactive process, and, as discussed above, never

33

presented evidence that he initiated the process by informing Kaiser he needed more time to take the EKG exam, except that he needed a "neutral place to take the EKG Exam, free from harassment and intimidation . . . before end of work hours tomorrow." To that end, it is undisputed Kaiser engaged with Mata, including offering him several opportunities for help with exam preparation and to retake the exam. It is also undisputed that in response to Kaiser's offers, Mata requested and received a subsequent leave of absence. There were no disputed issues of material fact as to this cause of action and it was properly rejected by the trial court.

D. **Summary Judgment on Mata's Fifth Cause of Action for Retaliation Was Properly Granted**

The FEHA provides that it is an unlawful employment practice "[f]or any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." (Gov. Code, § 12940, subd. (h).) Employees may establish a prima facie case of unlawful retaliation by showing that (1) they engaged in activities protected by the FEHA; (2) their employers subsequently took adverse employment action against them; and (3) there was a causal connection between the protected activity and the adverse employment action. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 472.)

On summary judgment, Kaiser offered undisputed evidence, and the trial court determined, that Mata could not establish a causal connection between its implementation of the EKG exam and his protected activities.

34

Mata's argument before us in support of his retaliation claim consists of one paragraph, where he contends that Kaiser committed an adverse employment action when it "sudden[ly]" imposed the EKG exam on him when he tried to return to work, thereby "making it impossible for him to get back his job" because of his "prolonged leave of absence" after his surgeries. Mata's argument is entirely speculative and unsupported by any evidence whatsoever. The trial court properly rejected this cause of action.

E.    **Mata's Eighth and Ninth Causes of Action for Wrongful Termination and Failure to Prevent Discrimination, All Derivative of FEHA, Similarly Fail**

Mata's eighth and ninth causes of action for wrongful termination in violation of public policy and failure to prevent discrimination, harassment, and retaliation similarly fail because these claims are specifically predicated on the same alleged conduct that form the basis of his FEHA claims.

We note that in granting summary judgment in favor of Kaiser, the trial court assumed Mata has been discharged or terminated. (See *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 503 [a cause of action for wrongful discharge in violation of public policy accrues at the time of termination of employment].) Mata's cause of action for wrongful termination in violation of public policy fails because he has not established the underlying FEHA claims. Because Mata's underlying FEHA claims fail, summary judgment was properly granted on the FEHA-dependent wrongful termination cause of action. (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 229 ["[B]ecause

35

[Mata's] FEHA claim fails, his claim for wrongful termination in violation of public policy fails"].)

Similarly, Mata's ninth derivative cause of action for failure to prevent discrimination, harassment, and retaliation fails because he has not established the underlying FEHA claims. For the same reasons, because Mata cannot establish his underlying FEHA claims for discrimination, harassment, and retaliation, the trial court properly granted summary judgment on his derivative cause of action for failure to prevent the same. (*Scotch*, *supra,* 173 Cal.App.4th at p. 1021 ["An actionable claim under section 12940, subdivision (k) [for failure to prevent discrimination or harassment] is dependent on a claim of actual discrimination [or harassment]".)

F.      **Mata Has Forfeited his Fourth, Seventh, Tenth, and Eleventh Causes of Action**

"A point not presented in a party's opening brief is deemed to have been abandoned or waived." (*Humes v. Margil Ventures, Inc.* (1985) 174 Cal.App.3d 486, 493.)  "An appellate court can deem an argument waived if it is not supported by analysis or argument in the appellate briefs." (*Employers. Mutual Casualty Co. v. Philadelphia Indemnity Ins. Co.* (2008) 169 Cal.App.4th 340, 349–350; *Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 366, fn. 2; *Abdulkadhim, supra,* 53 Cal.App.5th at p. 301 [review is limited to issues that are adequately briefed].)

Mata's opening brief lacks argument and analysis in support of his claim of error on his fourth, seventh, tenth, and eleventh causes of action.  He has forfeited these claims.

## DISPOSITION

The judgment is affirmed.  Respondent is awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:



VIRAMONTES, J.



SCHERB, J.

37